UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Allstate Indemnity Company and
Castle Key Indemnity Company,

      Plaintiffs,

v.

Marc L. Messina and Corey Skelton,
Individually and as a Trustee for the
Next of Kin of Decedent Beth Michelle
Skelton,

      Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 19-2748 (MJD/DTS)

---

Brian A. Wood and Michael T. Burke, Lind, Jensen, Sullivan & Peterson, A Professional Association, Counsel for Plaintiffs.

Michael M. Bader and Jodell M. Galman, Michael M. Bader Law, LLC, Counsel for Defendant Cory Skelton.

Marc Messina, *pro se.*

---

This matter is before the Court on Plaintiffs' Motion for Summary Judgment. (Doc. No. 52)

## I.    Background

This is an action for declaratory judgment in which Plaintiffs Allstate Indemnity Company ("Allstate") and Castle Key Indemnity Company ("Castle

Key") seek a declaration that their respective insurance policies with their named insured, Marc Messina, do not provide a duty to defend or indemnify Messina regarding the underlying wrongful death lawsuit filed in this District entitled <u>Corey Skelton v. Marc Messina et al.</u>, Civil No. 18-3344 (MJD/DTS).

In the underlying action, Corey Skelton asserted a wrongful death claim against Messina and his employer, Davidson Hotels, LLC, alleging that Messina drugged and sexually assaulted Beth Skelton in the hotel room used by Messina as his personal residence, and that Beth Skelton committed suicide "after suffering for more than 2 years from Post-Traumatic Stress Disorder (PTSD), profound depression and anxiety" because of Messina's conduct.  (Second Amended Complaint ("SAC") at 2.)[1]

## A.    Policies at Issue

### 1.  Allstate Personal Umbrella Policy

Allstate issued a personal umbrella policy to Messina (hereinafter the "Allstate Policy").  (Doc. No. 1-1.)  The Allstate Policy provides it "will pay damages which an insured person becomes legally obligated to pay because of bodily injury, personal injury or property damage. . . . Bodily injury, personal

---

[1] Skelton also brought an ERISA claim against Davidson Hotels and Reliance Standard Life Insurance for the proceeds of a life insurance policy issued through Beth Skelton's employment.

injury and property damage must arise from a covered occurrence. We will not pay any punitive or exemplary damages, fines and penalties." (Id. at 13.)

The Allstate Policy defines "occurrence" as "an accident during the policy period, including continued and repeated exposure to substantially the same general harmful conditions during the policy period, resulting in bodily injury, personal injury or property damage." (Id. at 10.) "Bodily injury" is defined as "a) physical harm to the body, including sickness, disease, disability or death resulting from physical harm to the body; b) shock, mental anguish or mental injury." (Id.) "Personal injury" is defined to include "damages resulting from a) false arrest; false imprisonment; wrongful detention." (Id.)

The policy also defines "Business" as:

a) Any full- or part-time activity of any kind:
   1) Arising out of or relating to an occupation, trade or profession of an insured person; and
   2) Engaged in by an insured person for economic gain, including the use of any part of any premises for such purposes. The providing of home day care services to other than an insured person or relative of an insured person for economic gain is a business.
b) The rental or holding for rental of any property by an insured person.

(Id.)

"Business property" means "any property on which a business is conducted." (Id.)

The Allstate Policy also describes the types of losses covered as follows:

We will cover an occurrence arising only out of:
1. Personal activities of an insured person, including the permissive use of a land vehicle or watercraft owned by an insured person.
2. A volunteer civil service which an insured person performs without pay, for a not-for-profit corporation and which is not a function of that person's business.  Payment or reimbursement for reasonable expenses actually incurred by the insured person in connection with the volunteer civic service is not considered pay.
3. The duties of your domestic or farm employees who are not subject to Worker's Compensation Laws.

(Id. at 13.)

The Allstate Policy also sets forth several exclusions from coverage.

Relevant to this action, the Allstate Policy will not apply:

12.    To bodily injury, personal injury or property damage intended by, or which may reasonably be expected to result from, the intentional or criminal acts or omissions of any insured person.  This includes any bodily injury, personal injury or property damage arising out of a violation of a penal law or ordinance committed by or with the consent or knowledge of an insured person.  This exclusion applies even if:
   a)    such insured person lacks the mental capacity to govern his or her conduct;
   b)    such bodily injury or property damage is of a different kind or degree than that intended or reasonably expected; or
   c)    such bodily injury or property damage is sustained by a different person than intended or reasonably expected.

This exclusion applies regardless of whether such insured person is actually charged with, or convicted of, a crime.

(Id.)

The Allstate Policy also provides it will not apply to any occurrence arising out of a business or business property.  (Id.)

Finally, the Allstate Policy includes the following choice of law provision:

This policy is issued in accordance with the laws of Florida and covers risks principally located in Florida.  Subject to the following paragraph, the laws of Florida shall govern any and all claims or disputes in any way related to this policy.

If a covered loss, or any other occurrence for which coverage applies under this policy, happens outside Florida, claims or disputes regarding that covered loss or any other covered occurrence may be governed by the laws of the jurisdiction in which that covered loss or other covered occurrence happened, only if the laws of that jurisdiction would apply in the absence of a contractual choice of law provision such as this.

(Id. at 12-13.)

### 2.  Castle Key Renters Policy

Castle Key issued a Renters Policy to Messina and listed him as the named insured (hereinafter the "Castle Key Policy").  (Doc. No. 1-2.)  This policy provides coverage for "damages which an insured person becomes legally obligated to pay because of bodily injury or property damage arising from an occurrence to which this policy applies and is covered by this part of the policy."  (Id. at 24.)

The Castle Key Policy defines "bodily injury" as "physical harm to the body, including sickness or disease, and resulting death, or any resulting symptom, effect, condition, disease or illness." (Id. at 11.) "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, during the policy period, resulting in bodily injury or property damage." (Id.) "Insured premises" means "residence premises" which is "that portion of any building used by you as a private residence, excluding any portion used for business purposes, which is described on the Policy Declarations." (Id. at 11, 12.) "Insured premises" also includes:

1. The part of any other premises, other structures and grounds used by you as a residence. This includes premises, structures and grounds you acquire for your use as a private residence while this policy is in effect;
2. any part of a premises not owned by an insured person but where an insured person is temporarily living;
         * * *
6. any premises used by an insured person in connection with the residence premises;
         * * *

(Id.)

"Business" means:

a) any full- or part-time activity of any kind engaged in for economic gain and the use of any part of any premises for such purposes.  . . .

b)  any property rented or held for rental by an insured person.  Rental of your residence premises is not considered a business when:
   1)  it is rented occasionally for residential purposes;
   2)  a portion is rented to not more than two roomers or boarders; or
   3)  a portion is rented as a private garage.

(Id.)

The Castle Key Policy also lists several exclusions from coverage.  Relevant here, the policy excludes the following:

We do not cover any bodily injury or property damage intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any insured person.  This exclusion applies even if:
   a)  Such insured person lacks the mental capacity to govern his or her own conduct;
   b)  Such bodily injury or property damage is of a different kind or degree than intended or reasonably expected; or
   c)  Such bodily injury or property damage is sustained by a different person than intended or reasonably expected.

This exclusion applies regardless of whether or not such insured person is actually charged with or convicted of a crime.

(Id.)

Finally, the Castle Key Policy contains the following choice of law provision:

This policy is issued in accordance with the laws of Florida and covers property or risks principally located in Florida.  Subject to the following paragraph, the laws of Florida shall govern any and all claims or disputes in any way related to this policy.

7

> If a covered loss to property, or any other occurrence for which coverage
> applies under this policy, happens outside Florida, claims or disputes
> regarding that covered loss to property or any other covered occurrence
> may be governed by the laws of the jurisdiction in which that covered loss
> to property or other covered occurrence happened, only if the laws of that
> jurisdiction would apply in the absence of a contractual choice of law
> provision such as this.

(Id. at 7.)

## II.   Motion for Summary Judgment

### A.   Standard of Review

Summary judgment is appropriate if, viewing all facts in the light most

favorable to the non-moving party, there is no genuine dispute as to any material

fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ.

P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The party seeking

summary judgment bears the burden of showing that there is no disputed issue

of material fact.  Celotex, 477 U.S. at 323.  "A dispute is genuine if the evidence is

such that it could cause a reasonable jury to return a verdict for either party; a

fact is material if its resolution affects the outcome of the case."  Amini v. City of

Minneapolis, 643 F.3d 1068, 1074 (8th Cir. 2011) (citing Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248, 252 (1986)).  The party opposing summary

judgment may not rest on mere allegations or denials but must set forth specific

facts showing that there is a genuine issue for trial.  <u>Krenik v. County of Le Sueur</u>, 47 F.3d 953, 957 (8th Cir. 1995).  The Eighth Circuit has held that because "the interpretation and construction of insurance policies is a matter of law, [] such cases are particularly amenable to summary judgment."  <u>John Deere Ins. Co. v. Shamrock Indus., Inc.</u>, 929 F.2d 413, 417 (8th Cir. 1991).

### B.    Choice of Law

Both policies at issue have a choice of law provision.  The Allstate Policy provides that "[s]ubject to the following paragraph, the laws of Florida shall govern any and all claims or disputes in any way related to this policy."  (Doc. No. 1-1 (Allstate Policy at 12).)  Similarly, the Castle Key Policy provides "the laws of Florida shall govern any and all claims or disputes in any way related to this policy."  (Doc. No. 1-2 (Castle Key Policy at 7).)

"In determining whether a choice of law provision in the parties' agreement will be given effect, a federal court sitting in diversity looks to the choice of law principles of the forum state, in this case Minnesota."  <u>Fla. State Bd. of Admin. v. Law Eng' and Envtl. Servs., Inc.</u>, 262 F. Supp.2d 1004, 1012 (D. Minn. 2003) (citation omitted).  Where the parties have acted in good faith, Minnesota courts generally honor the choice of law clauses in an agreement and

apply the substantive law agreed to by the parties. <u>Superior Edge, Inc. v. Monsanto Co.</u>, 964 F. Supp.2d 1017, 1031 (D. Minn. 2013) (citing <u>Hagstrom v. Am. Circuit Breaker Corp.</u>, 518 N.W.2d 46, 48 (Minn. Ct. App. 1994)).

The choice of law provisions in both policies are clear and provide that Florida law will "govern any and all claims or disputes in any way related to this policy." Skelton does not dispute that Florida law applies pursuant to the choice of law provisions in both policies. (<u>See</u> Doc. No. 61 (Skelton's Opp. Br. at 10 "Defendant Skelton agrees that the Plaintiffs' policies both contain a choice of law provision which provide that Florida law applies.").)[2] Thus, the Court will apply Florida law on issues of contract interpretation.

Florida law places the burden on the named insured to prove a claim is covered by the relevant policy. <u>Mt. Hawley Ins. Co. v. Roebuck</u>, 383 F. Supp.3d 1351, 1360 (S.D. Fla. 2019) (citing cases). Once the insured shows there is coverage, the burden shifts to the insurer to prove an exclusion applies to the coverage. <u>Id.</u> If there is an exception to the exclusion, the burden shifts back to the insured to prove the exception to exclusion applies. <u>Id.</u>

---

[2] Defendant Messina has not filed a brief in response to Plaintiffs' motion for summary judgment. Instead, he has filed an Affidavit in which he denies all claims of intentional and negligent acts alleged by Skelton. He does not address the issue of which law applies. (Doc. No. 60.)

In determining whether a duty to defend exists, the trial court is confined to the allegations in the complaint. State Farm Fire and Cas. Co. v. Tippett, 864 So.2d 31, 32 (Fla. Dist. Ct. App. 2003) rev. denied, 885 So.2d 389 (2004). The allegations control, "regardless of what the insured or others say actually happened" or "if the facts alleged are false or the legal theories unsound." Id. "Florida courts have found, however, that in special circumstances, a court may consider extrinsic facts if those facts are undisputed, and, had they been pled in the complaint, they clearly would have placed the claims outside the scope of coverage." Stephens v. Mid-Continent Cas. Co., 749 F.3d 1318, 1323 (11th Cir. 2014). Such cases are "best viewed as exceptional cases in which courts have crafted an equitable remedy when it is manifestly obvious to all involved that the actual facts placed the claims outside the scope of coverage." Id.

If the pleadings show the applicability of a policy exclusion, the insurer has no duty to defend. Tippett, 864 So.2d at 35. "Thus, wording alone in a pleading does not create a duty to defend, regardless of its artfulness." Id. (citing Amerisure Ins. Co. v. Gold Coast Marine Distribs., Inc., 771 So.2d 579, 582 (Fla. 4th DCA 2000) (holding that the use of "buzz words" like defamation or damage

to reputation, which are merely conclusory without any underlying factual allegations, do not create a duty to defend)).

### C.    Scope of Allegations Relevant to Coverage Determination

In opposing Plaintiffs' motion for summary judgment, Skelton sought to rely on "facts" that are not included in the SAC or the exhibits attached thereto. As set forth above, under Florida law, the Court generally considers only the allegations in the Complaint to determine whether there is a duty to defend and will consider extrinsic facts only if those facts are undisputed and clearly show the claims are outside the scope of coverage. <u>Stephens</u>, 749 F.3d at 1323. Skelton now concedes that the SAC is the controlling complaint. Accordingly, only those allegations in the SAC and the attached exhibits will be considered when determining coverage in this matter.

### D.    Whether Policies Provide Coverage

#### 1.    Occurrence

Count 1 of the SAC asserts a wrongful death claim against Davidson Hotels and Messina, claiming that Beth Skelton took her own life "after suffering more than 2 years from Post-Traumatic Stress Disorder ("PTSD"), profound depression and anxiety caused by the sexual harassment and assault by Marc. L.

Messina, the General Manager of the Radisson Hotel Bloomington and Water

Park of America where they both worked." (SAC Introduction.) The SAC

further alleges that on November 15, 2013, Beth Skelton "was drugged, falsely

imprisoned and sexually assaulted by Marc Messina in Room No. 803 of the

Radisson Hotel where Messina resided." (SAC ¶ 3.)

The assault is described as follows:

After work on November 15, 2013, Beth and the Davidson head chef were having a drink in the Radisson bar called the "Split Rock" when Messina joined them, bought drinks for Beth, plying her with alcohol and spiking her drink with an unknown drug or substance that made Beth lose consciousness and become incoherent.

In the early hours of November 16, 2013, Beth awoke in Room 803 of the Radisson feeling sick. Messina was present in the room and Beth was in her underwear. Beth panicked and Messina tried to calm her by giving her a pill to "feel better". Beth passed out again shortly after taking Messina's pill. When Beth awoke in the morning, Messina told her she had the sweetest scent (referring to her genitalia). Thereafter, Beth was physically ill and confused. She presented for a SARS exam on November 19, 2013, wherein she related that after having a drink with her General Manager she began feeling numb and woozy. The examination revealed numerous finger-tip size bruises on her arms and legs. While the examination didn't reveal the presence of a date rape drug, Officer George Harms testified in his deposition that the most common "date rape drug" would be out of her system within 24 hours.

(SAC ¶¶ 16 and 17.)

Beth is alleged to have been mentally incapacitated due to Messina spiking her drinks, and that Beth was unable to give consent to Messina's wrongful and illegal conduct, and that Messina took advantage of Beth's helplessness and engaged in unwanted and non-consensual sexual contact with Beth.  (SAC ¶¶ 19 and 20.)  "As a direct result of the negligent, illegal and unlawful acts of Messina, Beth became depressed and suffered from PTSD causing her suicide."  (Id. ¶ 21.)

Exhibit 2 to the SAC is a Sexual Assault Exam Report ("SARS") in which Beth Skelton described to the SARS examiner what happened on the night of November 15-16, 2013.  She described that the night began with drinks with coworkers, and that she decided to have a drink or two with Messina because she said something earlier to him that upset him and that at some point she realized:

> I'm done, and I gotta go.  I was foggy weird, I didn't see the environment I didn't see time.  It was this haze and I don't know how I got up there.  It was 2:46 am – I remember because I woke up in a panic saying 'Oh my god, oh my god.'  I have to go, I have to go.  He told me to calm down and I asked him what happened and he told me to calm down.  He gave me something to take like aspirin. I just had my underwear on.  Then he said "why do you wear a push up bra?"  And he said I wouldn't make love to you like that.  And I just thought uhh.  I woke up at 8:40 am and thought why are my contacts in.  Then my husband called and he was feeding me lines to tell my husband.  My husband remembers but I don't.  I just remember waking up and thinking this is so wrong what happened.  I put

eye drops in my eyes and put my clothes on and I took the elevator down to the garage and walked to my car and raced home and took a shower.

(SAC, Ex. 2 at 26.)

Finally, with regard to Skelton's claim that Davidson Hotel breached its duty of care to Beth by negligently hiring Messina, Skelton alleges that the "assault and false imprisonment of Beth by Messina was caused by the breach of the duties [] Davidson owed to Beth to provide her a safe workplace free from sexual harassment and assault from co-employees like Messina."  (SAC ¶¶ 23 and 24.)

Plaintiffs argue that the allegations in the SAC describing the events of November 15-16, 2013 are not covered under either policy, because those allegations are not an occurrence as defined in the polices.  Both policies define an "occurrence" as "an accident . . . resulting in bodily injury [or] personal injury."  (Doc. No. 1-1 at 10; Doc. No. 1-2 at 11.)

Under Florida law, "the term 'accidental,' as used in an insurance policy, means unexpected or unintended."  Tippett, 864 So.2d at 34.  "The court has further held that the term accident, when not defined in a liability policy, encompasses not only 'accidental events' but also injuries or damages neither expected nor intended from the standpoint of the insured."  Id.  "Whether

15

injuries or damages were expected or intended by the insured is a question of fact in some cases, or a matter of law in other cases, where the insured's actions were so inherently dangerous or harmful that injury was sure to follow." Id.

Florida courts have found that the sexual assault of an incapacitated person is an intentional act – one from which the harm inheres in and flows from the proscribed act. Tippett, 864 So.2d at 36 (finding allegations that insured incapacitated victim with date rape drug, but that insured may not have expected or intended resultant harm from forcing victim to engage in non-consensual sex, "is unreasonable and illogical"); see also Allstate Ins. Co. v. Bailey, 723 F. Supp. 665, 669 (M.D. Fla. 1989) ("Despite the depiction of the incident as negligence, this court can conceive of no way that [insured's] alleged [sexual molestation] could be anything but intentional.") Florida courts further hold that "public policy dictates against insuring for losses from intentional or criminal acts. If such insurance were available, the financial burden of the loss would shift from the wrongdoer to the insurer." Tippett, 864 So.2d at 36.

Plaintiffs argue that because the underlying action involves the claim that Messina sexually assaulted Beth Skelton, and because sexual assault is not an

"accident," there is no "occurrence" to trigger coverage under either of the policies at issue.

Alternatively, Plaintiffs argue that both policies include an exclusion for intentional or criminal acts, and that Florida courts will infer intent where there are allegations involving a sexual assault.  See Landis v. Allstate Ins. Co., 546 So.2d 1051, 1053 (Fla. 1989); Tippett, 864 So. 2d at 34; Keen v. Fla. Sheriffs' Self-Ins., 962 So.2d 1021, 1022 (Fla. Dist. Ct. App. 2007).

In response, Skelton argues that "occurrence" as defined in the Allstate Policy, includes an accident resulting in personal injury, and that personal injury is defined to include damages resulting from false imprisonment.[3]  (Doc. No. 1-1 at 10.)  Thus, the Allstate Policy provides coverage for damages arising from the intentional tort of false imprisonment.  Skelton then notes that the Allstate Policy also attempts to exclude from coverage damages for intentional torts that are "intended by, or which may reasonably be expected to result from, the intentional or criminal acts or omissions of any insured."  Under Florida law, courts have held that where an insurance policy provides coverage for

---

[3] The parties agree that the Castle Key Policy does not define personal injury to include damages resulting from false imprisonment.

17

intentional torts and also has an exclusion for intentional acts, the policy is ambiguous and/or illusory and the exclusion will not be enforced.  See Tire Kingdom, Inc. v. First Southern Ins. Co., 573 So.2d 885 (Fla. 3d DCA 1991) (finding that where policy provided coverage for personal and advertising injuries, and excluded advertising injuries, the inconsistencies must be resolved in favor of the insured); Purrelli v. State Farm Fire and Cas. Co., 698 So.2d 618 (Fla. 2d DCA 1997) (where policy provided coverage for damages arising out of invasion of privacy, which is actionable only if done intentionally, yet excludes damages arising from intended acts, the policy was ambiguous and insurer was not entitled to judgment on the pleadings).

Plaintiffs argue that Skelton's reliance on Purrelli is misplaced, as a false imprisonment claim was not asserted in the underlying action.  The Court agrees.

A claim for false imprisonment has the following elements:  1) words or acts intended to confine; 2) actual confinement; and 3) awareness by the plaintiff that he/she is confined[4].  Blaz v. Molin Concrete Prod. Co., 244 N.W.2d 277, 279

---

[4] The claims asserted in the underlying complaint are governed by Minnesota law, therefore, to determine whether Skelton alleged a claim of false imprisonment in the SAC, the Court will refer to Minnesota law.

(Minn. 1976); "The element of confinement is satisfied if the plaintiff is compelled to go where [s]he does not wish to go." Blaz, 244 N.W.2d at 279.

The only claim asserted in the SAC against Messina was one for wrongful death attributed to Messina's sexual assault. False imprisonment was not plead as a separate claim and the facts and injuries underlying the false imprisonment claim are the same as those alleged in the claim of sexual assault. As a result, it is clear the use the term "false imprisonment" in the SAC simply describes a contemporaneous and indivisible act comprising sexual assault. The fact that the term "false imprisonment" is alleged in the SAC does not create a duty to defend where there are no underlying factual allegations supporting such a claim. See Amerisure Ins. Co., 771 So.2d at 582 (holding that the use of "buzz words" like defamation or damage to reputation, which are merely conclusory without any underlying factual allegations, do not create a duty to defend).

Moreover, there are no allegations in the SAC that Beth was aware of her confinement. Blaz, 244 N.W.2d at 279. Instead, the SAC alleges that Beth was either unconscious or mentally incapacitated and had no recollection of how she got to Messina's room on the night in question. (SAC ¶¶ 17, 19 and 20; Ex. 2 at 26.) Further, nowhere in the SAC does Skelton allege that Beth was unable to

leave Messina's room, or that he prevented her from leaving.  Because the SAC

fails to allege a separate claim of false imprisonment, the Court finds that

Skelton's argument that the Allstate Policy is ambiguous is without merit[5].

### 2.    Concurrent Cause Doctrine

Skelton further argues the Allstate Policy provides coverage based on the

claim of false imprisonment, because Florida courts also recognize the concurrent

cause doctrine, which permits coverage when the loss can be attributed to

multiple causes, as long as one of the causes is an insured risk.  Guideone Elite

Ins. Co. v. Old Cutler Presbyterian Church, Inc., 420 F.3d 1317, 1330 (11th Cir.

2005).  "This doctrine, however, is only applicable 'when the multiple causes are

not related and dependent and involve a separate and distinct risk.'"  Id.

"Causes are dependent when one peril instigates or sets in motion the other."  Id.

---

[5] In the underlying action, Skelton sought to file a Third Amended Complaint seven months
after the deadline set forth in the Pretrial Scheduling Order.  (Civil No. 18-3344, Doc. No. 145.)
In support, Skelton argued that he had established good cause for filing the motion after the
deadline because despite his diligence, he was unable to obtain the new evidence supporting
the new allegations until after the deadline had passed. (Id. Doc. No. 148.)  The Magistrate
Judge disagreed, finding that Skelton had access to such evidence well before the deadline, and
denied the motion to amend.  (Id. (Doc. No. 162 at ¶¶ 4-8).)  While the Magistrate Judge did
note that the SAC already alleged facts supporting a false imprisonment claim (Id. at ¶ 3), such
finding is dicta as the parties did not argue whether the SAC stated a claim for false
imprisonment (in fact Skelton argued the Third Amended Complaint was necessary to
demonstrate coverage for the false imprisonment claim in this case), and the Magistrate Judge
did not include any analysis as to the elements of a false imprisonment claim.

For example, in Guideone, a mother was picking up her daughter from a preschool located within a church when a man came up and struck her and threw her in the van. 420 F.3d at 1321. The man then got into the van and drove off, demanding that she provide him the PIN for her ATM card and forcing her to perform oral sex while he drove. Id. At one point, he stopped the van, removed the woman from the van and raped her. Id. They then proceeded to multiple banks where the woman was forced to withdraw money from an ATM. Id. at 1322. On their way back to the church, the man again forced the woman to perform oral sex on him. Id. He then left the woman and her children in the church parking lot. Id.

The church liability policy contained a sexual molestation exclusion. In determining that the concurrent cause doctrine applied, the Eleventh Circuit held that the injuries alleged were caused by independent perils, noting that "[r]obbery and rape have separate objectives that can work in tandem to cause one loss." Id. at 1330. "Robbery is not part and parcel to the crime of rape, and the same is true of kidnapping, assault, imprisonment, and battery." Id. 1330. Thus, the court found coverage was available for injuries resulting from the robbery, even though the policy had a sexual misconduct exclusion. Id.; see also

First Specialty Ins. Corp. v. 633 Partners, Ltd., 300 Fed. Appx. 777 (11th Cir. 2008) (finding that based on the allegations in the complaint, the false imprisonment claim did not reference the sexual assault claim and was pleaded as a separate and distinct event from the assault).

Skelton alleges the concurrent cause doctrine applies here, because Beth was falsely imprisoned all night, and that the false imprisonment is separate and apart from the sexual assault claim.

The Court disagrees. As set forth above, false imprisonment was not pleaded as a separate and distinct cause of action. In addition, the facts alleged in the SAC and attached exhibits describe claims of sexual assault and false imprisonment that are dependent and intertwined. In fact, the two references to false imprisonment in the SAC are used conjunctively with sexual assault. (SAC at ¶ 3 ("Beth . . . was drugged, falsely imprisoned and sexually assaulted . . by Messina . . ."); ¶ 24 ("That the assault and false imprisonment of Beth by Messina was caused by the breach of the duties Defendant Davidson owed to Beth . . ."). Accordingly, the Court finds that the concurrent cause doctrine does not apply here. See Farm Family Cas. Ins. Co. v. Samperi, 242 F. Supp.3d 83 (D. Conn. 2017) (distinguishing Guideone because the victim in the underlying action

relied on the same set of facts for her claim of false imprisonment as her claim for sexual abuse, and that the claim of false imprisonment would not exist but for the alleged sexual assault); see also Auto-Owners Ins. Co. v. Todd, 547 N.W.2d 696, 700 (Minn. 1996) (finding the false imprisonment claim was inextricably linked to the insured's overall intentional plan to sexually assault victim, therefore coverage for damages was excluded under policy's intentional acts exclusion).

### 3. Conclusion

The Court finds that the allegations set forth in the SAC and attached exhibits supporting the claim of wrongful death are not covered under either policy because those allegations describe a sexual assault that was neither "unexpected or unintended" on the part of the insured, Marc Messina.  Further, the Court finds that coverage was not triggered by including the term "false imprisonment" in the SAC because false imprisonment was pleaded in the SAC as dependent and intertwined with the claim of sexual assault.  Finally, because sexual assault is an intentional act that is excluded under the Intentional Acts Exclusion under both policies, there is no duty to defend or indemnify under those policies.

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment [Doc. No. 52] is **GRANTED**.  Plaintiffs are under no obligation to defend or indemnify their insured, Marc L. Messina, in a lawsuit filed in the United States District Court, District of Minnesota, Court File No. 18-cv-3344.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date:  July 21, 2021                     s/Michael J. Davis
                                         Michael J. Davis
                                         United States District Court